# Exhibit A



LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Kaitlyn A. Redfield-Ortiz
State Bar No. 030318
Natalie B. Virden
State Bar No. 031609
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nicholas.enoch@azbar.org

Attorneys for Plaintiff



MAR 06 2015

MICHAEL K. JEANES, CLERK
K. KEE
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PALMER, ADAM J., a single man; MORRISON, WILLIAM J., a single man; PHILLIPS, SARAI, a single woman; and a class of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>HAYS, GAVIN and NANCY, husband and wife; and SPRINGBOARD, INC., an Arizona Corporation<br><br>    Defendants. | No.  CV2015-003285<br><br><br>**COLLECTIVE ACTION COMPLAINT** |

**NOW COME** Plaintiffs, Adam J. Palmer, William J. Morrison, and Sarai Phillips, by and through their attorneys, Lubin & Enoch, P.C., bringing this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

### INTRODUCTION

1.    Plaintiffs are former employees of Defendants Gavin and Nancy Hays and their company, SpringBoard, Inc. (hereinafter collectively referred to as "Defendants").

2.    In this lawsuit, Plaintiffs allege that Defendants have willfully contravened their right to be compensated for all overtime due them in accordance with the FLSA, 29 U.S.C. § 207.

**PARTIES**

3.    Plaintiffs, currently and during all times relevant to this proceeding, have resided in Maricopa County, Arizona.

4.    Plaintiffs are former employees of Defendants as defined in 29 U.S.C. § 203(e)(1).

5.    Pursuant to 29 U.S.C. § 216(b) Plaintiffs also seek to represent all other similarly situated employees who work, or have worked, for Defendants as Relationship Managers at Defendants' main office, located at 6970 E. Chauncey Lane Suite #110, Phoenix, Arizona, since March 3, 2012, and who have not been paid the requisite overtime compensation.

6.    Plaintiffs request that they be permitted to serve as representatives of those who will later consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b).

7.    Plaintiffs presently believe and allege that the class includes approximately twenty (20) to thirty (30) separate individuals who have, since March 3, 2012, worked for Defendants as Relationship Managers.  Accordingly, joinder of all members of the class would be impracticable.

8. The claims asserted herein on behalf of Plaintiffs and the class present questions of law and fact common to the class including, in particular, whether Defendants have failed to pay the requisite overtime compensation to their employees.

9. Plaintiffs' claims are typical of the claims of the class.

10. Plaintiffs, as representative parties, will fairly and adequately protect the interests of the class.

11. The prosecution of separate lawsuits by individual members of the class would not only be judicially inefficient, but it would also create a risk of inconsistent or varying adjudication with respect to individual members of the class, which would establish incompatible standards of conduct for Defendants.

12. Defendants Gavin and Nancy Hays (hereinafter collectively referred to as "the Hays") are now, and at all times relevant hereto have been, husband and wife, constituting a marital community under the laws of the State of Arizona. The acts engaged in, and the omissions made by, the Hays were performed as agents, and for the benefit, of the marital community.

13. Upon information and belief, the Hays are residents of Maricopa County, Arizona, and have been for all times relevant to this proceeding.

14. The Hays are "employer[s]" as defined in 29 U.S.C. § 203(d).

3

15. SpringBoard, Inc. (hereinafter referred to as "SpringBoard") is an Arizona corporation with its principal place of business at 6970 E. Chauncey Lane Suite #110, Phoenix, Arizona 85054. According to its website, SpringBoard focuses "exclusively on finding highly rewarding jobs for skilled clinical professionals working in catheterization labs, electrophysiology, and imaging."

16. Gavin Hays ("Mr. Hays") is the CEO and sole director of SpringBoard. Nancy Hays ("Mrs. Hays") is the statutory agent for SpringBoard. The Hays, and Mr. Hays in particular, exercise managerial responsibilities and substantial control over the terms and conditions of the employees' work. Among other things, Mr. Hays is primarily responsible for hiring and firing employees, supervising and controlling employee work schedules and conditions of employment, determining the rate and method of payment, and maintaining any employment records that may exist.

17. SpringBoard is an "employer" as defined in 29 U.S.C. § 203(d) and A.R.S. § 23-362(B).

18. Upon information and belief, SpringBoard is not only influenced and governed by the Hays, but there is such a unity of interest and ownership that the individuality, or separateness, of SpringBoard and the Hays has ceased to exist.

19. Upon information and belief, the facts are such that an adherence to the fiction of the separate existence

4

of SpringBoard and the Hays would, under these particular circumstances, sanction a fraud or promote injustice.

20.    SpringBoard's annual gross volume of sales or business done is not less than $500,000.  In addition, while they were employed by Defendants, Plaintiffs were engaged in commerce or in the production of goods for commerce.  For instance, while Plaintiffs were employed by Defendants as Relationship Managers they communicated with individuals all over the United States and placed these individuals in jobs in multiple states.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over the subject matter of this complaint pursuant to A.R.S. § 12-123.

22. Venue is proper in this Court pursuant to A.R.S. § 12-401.

## GENERAL ALLEGATIONS

23.    From on or about July 29, 2013 through approximately October 28, 2014, Defendants employed Adam Palmer ("Palmer").  During this period of time, Palmer worked for Defendants as a Relationship Manager, though he also unofficially worked as the Social Media Manager for SpringBoard.

24.    As a Relationship Manager, Palmer's responsibilities consisted of the following: performing recruitment responsibilities, marketing available staff to existing and prospective clients, identifying candidates by recruiting the most qualified employees available,

5

developing new and existing candidates and cultivating long term relationships, and making 300+ phone calls and having 12 hours of phone talk time weekly. *See* Exhibit A.

25. From on or about September 30, 2013 through approximately November 4, 2014, Defendants employed Sarai Phillips ("Phillips"). During this time, Phillips worked as a Relationship Manager at SpringBoard's main office.

26. Phillips' responsibilities were the same as Palmer's, described in ¶ 24, *supra*. *See* Exhibit B.

27. From on or about May 7, 2013 through approximately September 11, 2014, Defendants employed William Morrison ("Morrison"). During this time, Morrison worked as a Relationship Manager at SpringBoard's main office.

28. Morrison's responsibilities were the same as Palmer's, described in ¶ 24, *supra*. *See* Exhibit C.

29. Upon information and belief, other Relationship Managers at SpringBoard's main office had, and continue to have, similar responsibilities.

30. According to SpringBoard's employee handbook, attached hereto as Exhibit D, full-time employees, like Relationship Managers, are those who work a minimum of thirty-eight (38) hours per week.

31. Plaintiffs and other Relationship Managers were scheduled to work Monday through Thursday from 8:00 a.m. until 5:30 p.m. with a one hour lunch break and Friday from 8:00 a.m. until 5:00 p.m. with a one hour lunch

6

break.

32.    Relationship Managers were scheduled to work, and did work, at minimum, forty-two (42) hours per week.

33.    Defendants did not monitor whether or not Relationship Managers actually took lunch breaks each day.

34.    Plaintiffs did not always take their lunch breaks and, therefore, occasionally worked through their lunch breaks.

35.    Upon information and belief, other Relationship Managers also worked through their lunch breaks.

36.    Plaintiffs' and other Relationship Managers' salaries were not adjusted if they worked through their lunch breaks.

37.    Plaintiffs were paid on a salary basis, plus commissions. With the exception of Plaintiff Morrison, the Plaintiffs and members of the potential class were paid a two hundred dollar ($200) automobile reimbursement per paycheck.

38.    Upon information and belief, other Relationship Managers were also paid on a salary basis, plus commissions.

39.    When Plaintiffs took a sick day, left early, or arrived late, time was deducted from their paychecks at their hourly rate.

40.    Upon information and belief, other Relationship Managers also received deductions in pay when they took a sick day, arrived late, or left early.

41. Plaintiffs were not paid extra if they came in early, stayed late, or worked extra hours on the weekend.

42. Plaintiffs did, on occasion, come in early, stay late, and work on the weekend.

43. Upon information and belief, on occasion, other Relationship Managers also arrived early, stayed late, and worked on the weekend, and were also not paid for the additional time worked.

44. Plaintiffs were sometimes required to work on weekends in order to complete their assigned work and meet the 300 calls per week requirement.

45. Plaintiffs were aware of other Relationship managers working on weekends.

46. Plaintiffs responded to numerous work-related phone calls and emails on the weekend.

47. Plaintiffs were aware of other Relationship Managers also responding to work-related phone calls and emails on the weekend.

48. Plaintiffs and other Relationship Managers were not paid anything above their usual salary for the time they spent working on weekends.

49. All Relationship Managers worked at least two (2) hours of overtime each week.

50. Plaintiffs were never compensated at a rate of one and one-half times (1 ½ x) their regular rate for hours worked over forty (40) hours per week, as required under 29 U.S.C. § 207.

8

## CLAIM FOR RELIEF
### Violation of FLSA Overtime Compensation Standard

51.    Defendants have willfully failed to compensate Plaintiffs, and others similarly situated, for overtime hours they worked, as required under 29 U.S.C. § 207. Plaintiffs, and others similarly situated, are entitled to receive compensation at a rate of one and one-half times (1½ x) their regular wage rate for any hours worked for the Defendants in excess of forty (40) hours in any week, plus liquidated damages, attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b), which form an integral part of the relief sought.

52.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

### PRAYER

**WHEREFORE,** Plaintiffs pray that they recover from Defendants the following:

1.    An award of unpaid overtime in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. §§ 207 and 216(b);

2.    An award of liquidated damages regarding number 1, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

3.    An enhancement payment of no less than $5,000 to Adam Palmer, Sarai Phillips, and William Morrison, as compensation for the expense they

9

incurred on behalf of the class.

4. A declaratory judgment pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831, *et seq.*, that Defendants have willfully and wrongfully violated their statutory and legal obligations and deprived Plaintiffs, and the members of the class, of their rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

5. Attorneys' fees pursuant to 29 U.S.C. § 216(b);

6. Court costs and costs of litigation pursuant to A.R.S. § 12-341 and/or 29 U.S.C. § 216(b); and

7. Such other and further equitable relief as the Court deems just.

RESPECTFULLY SUBMITTED this 6th day of March, 2015.

LUBIN & ENOCH, P.C.

Nicholas J. Enoch, Esq.
Attorney for Plaintiff

10

## CONSENT TO JOIN COLLECTIVE ACTION

I understand that this lawsuit is brought under the FLSA, as amended, 29 U.S.C. § 216(b).  I hereby consent, agree and opt-in to become a Plaintiff herein and be bound by any judgment of the Court or any settlement of this action.

Adam J. Palmer
Plaintiff

William J. Morrison
Plaintiff

Sarai Phillips
Plaintiff

Original of the foregoing
Complaint filed this 6th
day of March, 2015, with:

Clerk of Superior Court
201 West Jefferson Street
Phoenix, Arizona 85003

/s/Cristina Gallardo-Sanidad

11

# EXHIBIT A



Adam Palmer                                                                      07/11/2013

  SpringBoard, Inc. ("SpringBoard") is pleased to offer you a position with our company. Your initial title will be Relationship Manager (Contract Hire Division), and we anticipate that your initial responsibilities will include, but are not limited to the following:

- Relentlessly perform recruitment responsibilities to include, but not limited to cold calling, networking events, referrals, data base mining, and recruiting presentations.
- Work with team to market available staff to existing and prospective clients.
- Manage open client search requirements timely and efficiently, identifying candidates by recruiting the most qualified employees available.
- Report weekly and monthly results to manager.
- Maintain a high level of activity making 300+ phone calls, and 12 hours of phone talk time weekly.
- Maintain a constant sense of URGENCY.
- **Make 4 contract placements in the first 90 days** – Ramping up to production to add at least 2 new hires per month for a first year goal of 10 contractors working.
- Develop new and existing candidates and cultivate long term relationships.
- Participate in other marketing campaigns and initiatives required such as tradeshows, employee and client entertainment, and presentations to schools etc.
- General office duties as assigned.

  Your tentative start date is Tuesday, July 23rd at 9:00 AM. You will begin reporting to Gavin Hays.

Of course, we strive to continuously evaluate our business and your capabilities, and your responsibilities and reporting relationship may, and likely will, change over time at the sole direction of Springboard.

  Your starting annual salary, which is subject to periodic review and adjustment, will be paid at $33,000 per year plus commission, before applicable withholding and taxes, paid on the company's regular paydays (bi-weekly).

  We currently have benefit plans covering things such as vacation, medical insurance, disability, and 401(k). Additional information concerning our benefits is available upon request, and, if you accept this offer, I encourage you to review the actual company policies so that you fully understand them. Please understand that these policies are not written in stone, and may be modified in the future.

  If you accept this offer of employment, you represent to SpringBoard that employment with SpringBoard will not violate any contractual obligation or other duty that you may owe to former employers or other parties, including obligations not to compete and obligations not to disclose trade secrets or other confidential business information.



If you accept this offer, both you and SpringBoard will have the right to terminate your employment at any time, for no reason or for any reason, with or without cause. This is known as employment "at will." Nothing in this letter or in any company policy or statement, including statements made to you during negotiations about working at SpringBoard, is intended to or create terms of an express or implied contract of employment, nor guarantees employment for a specific term. Only the Chief Executive Officer and Board of Directors of SpringBoard may modify your at-will employment status or guarantee that you will be employed for a specific period of time, and any such modification must be in writing, approved by the Board of Directors, and signed by an authorized SpringBoard representative. This letter, once executed by you and SpringBoard, constitutes the entire agreement between you and SpringBoard regarding your employment, and this agreement may be modified only in a written document approved by the SpringBoard Board of Directors and signed by you and an authorized SpringBoard representative.

To accept this offer, please carefully read the statement below, sign where indicated, and return the letter to me. Please let me know if you have any questions about the matters discussed in this letter, or otherwise. We sincerely hope that you will accept this offer and we look forward to working with you. The employment offer reflected in this letter expires July 18th, 2013 unless accepted by you or revoked by SpringBoard prior to that time.

Sincerely,

*Gavin Hays*

Gavin Hays

I understand, acknowledge, and agree to the terms and conditions of employment described in this letter, and I accept employment with SpringBoard on these terms and conditions.

_____        7-14-13
EMPLOYEE SIGNATURE                              Date

Print Name: ADAM PALMER

# EXHIBIT B



Sarai Phillips

████████████████

9.11.13

SpringBoard, Inc. ("SpringBoard") is pleased to offer you a position with our company. Your initial title will be Relationship Manager (Contract Hire Division), and we anticipate that your initial responsibilities will include, but are not limited to, the following:

- Relentlessly perform recruitment responsibilities to include, but not limited to cold calling, networking events, referrals, data base mining, and recruiting presentations.
- Proactively market available staff to existing and prospective clients.
- Manage open client search requirements timely and efficiently, identifying candidates by recruiting the most qualified employees available.
- Report weekly and monthly results to manager.
- Maintain a high level of activity making 300+ phone calls, and 12 hours of phone talk time weekly.
- Maintain a constant sense of URGENCY.
- **Make 4 contract placements in the first 90 days** – Ramping up to production to add at least 2 new hires per month for a first year goal of 10 contractors working.
- Develop new and existing candidates and cultivate long term relationships.
- Participate in other marketing campaigns and initiatives required such as: Tradeshows, employee and client entertainment and presentations to schools etc.
- General office duties as assigned.

Your start date is September 30, 2013 – 9am. You will begin reporting to Tim Jones. Of course, we strive to continuously evaluate our business and your capabilities, and your responsibilities and reporting relationship may, and likely will, change over time at the sole direction of Springboard.

Your starting biweekly salary, which is subject to periodic review and adjustment, will be paid $35,000 plus commission, before applicable withholding and taxes, paid on the company's regular paydays.

We currently have benefit plans covering things such as vacation, medical insurance, disability, and 401(k). Additional information concerning our benefits is available upon request, and, if you accept this offer, I encourage you to review the actual company policies so that you fully understand them. Please understand that these policies are not written in stone, and may be modified in the future.

If you accept this offer of employment, you represent to SpringBoard that employment with SpringBoard will not violate any contractual obligation or other duty that you may owe to former employers or other parties, including obligations not to compete and obligations not to disclose trade secrets or other confidential business information.

Palmer et al_0003



If you accept this offer, both you and SpringBoard will have the right to terminate your employment at any time, for no reason or for any reason, with or without cause. This is known as employment "at will." Nothing in this letter or in any company policy or statement, including statements made to you during negotiations about working at SpringBoard, is intended to or does create terms of an express or implied contract of employment, nor guarantees employment for a specific term. Only the Chief Executive Officer and Board of Directors of SpringBoard may modify your at-will employment status or guarantee that you will be employed for a specific period of time, and any such modification must be in writing, approved by the Board of Directors, and signed by an authorized SpringBoard representative. This letter, once executed by you and SpringBoard, constitutes the entire agreement between you and SpringBoard regarding your employment, and this agreement may be modified only in a written document approved by the SpringBoard Board of Directors and signed by you and an authorized SpringBoard representative.

To accept this offer, please carefully read the statement below, sign where indicated, and return the letter to me. Please let me know if you have any questions about the matters discussed in this letter, or otherwise. We sincerely hope that you will accept this offer and we look forward to working with you. The employment offer reflected in this letter expires September 14, 2013 unless accepted by you or revoked by SpringBoard prior to that time.

Sincerely,

Gavin Hays

I understand, acknowledge, and agree to the terms and conditions of employment described in this letter, and I accept employment with SpringBoard on these terms and conditions.

---

EMPLOYEE SIGNATURE                              Date

Print Name:_____

Palmer et al_0004

# EXHIBIT C



William Morrison                                                                          04/25/2013

SpringBoard, Inc. ("SpringBoard") is pleased to offer you a position with our company. Your initial title will be Relationship Manager (Contract Hire Division), and we anticipate that your initial responsibilities will include, but are not limited to the following:

- Relentlessly perform recruitment responsibilities to include, but not limited to cold calling, networking events, referrals, data base mining, and recruiting presentations.
- Work with team to market available staff to existing and prospective clients.
- Manage open client search requirements timely and efficiently, identifying candidates by recruiting the most qualified employees available.
- Report weekly and monthly results to manager.
- Maintain a high level of activity making 300+ phone calls, and 12 hours of phone talk time weekly.
- Maintain a constant sense of URGENCY.
- **Make 4 contract placements in the first 90 days** – Ramping up to production to add at least 2 new hires per month for a first year goal of 10 contractors working.
- Develop new and existing candidates and cultivate long term relationships.
- Participate in other marketing campaigns and initiatives required such as tradeshows, employee and client entertainment, and presentations to schools etc.
- General office duties as assigned.

Your tentative start date is Tuesday, May 7th, 2013 at 9:00 AM. You will begin reporting to Gavin Hays.

Of course, we strive to continuously evaluate our business and your capabilities, and your responsibilities and reporting relationship may, and likely will, change over time at the sole direction of Springboard.

Your starting annual salary, which is subject to periodic review and adjustment, will be paid at $35,000 per year plus commission, before applicable withholding and taxes, paid on the company's regular paydays (bi-weekly).

We currently have benefit plans covering things such as vacation, medical insurance, disability, and 401(k). Additional information concerning our benefits is available upon request, and, if you accept this offer, I encourage you to review the actual company policies so that you fully understand them. Please understand that these policies are not written in stone, and may be modified in the future.

If you accept this offer of employment, you represent to SpringBoard that employment with SpringBoard will not violate any contractual obligation or other duty that you may owe to former employers or other parties, including obligations not to compete and obligations not to disclose trade secrets or other confidential business information.

Palmer et al_0005



If you accept this offer, both you and SpringBoard will have the right to terminate your employment at any time, for no reason or for any reason, with or without cause. This is known as employment "at will." Nothing in this letter or in any company policy or statement, including statements made to you during negotiations about working at SpringBoard, is intended to or create terms of an express or implied contract of employment, nor guarantees employment for a specific term. Only the Chief Executive Officer and Board of Directors of SpringBoard may modify your at-will employment status or guarantee that you will be employed for a specific period of time, and any such modification must be in writing, approved by the Board of Directors, and signed by an authorized SpringBoard representative. This letter, once executed by you and SpringBoard, constitutes the entire agreement between you and SpringBoard regarding your employment, and this agreement may be modified only in a written document approved by the SpringBoard Board of Directors and signed by you and an authorized SpringBoard representative.

To accept this offer, please carefully read the statement below, sign where indicated, and return the letter to me. Please let me know if you have any questions about the matters discussed in this letter, or otherwise. We sincerely hope that you will accept this offer and we look forward to working with you. The employment offer reflected in this letter expires April 29, 2013 unless accepted by you or revoked by SpringBoard prior to that time.

Sincerely,

Gavin Hays

I understand, acknowledge, and agree to the terms and conditions of employment described in this letter, and I accept employment with SpringBoard on these terms and conditions.

_____          _____
EMPLOYEE SIGNATURE                                Date

Print Name:_____

# EXHIBIT D



## EMPLOYEE HANDBOOK

Palmer et al_0007

# Welcome to SpringBoard! Dear Teammate:

An exciting and challenging experience is in store as you become an employee at SpringBoard. We are pleased to introduce this Employee Handbook that describes our Company's current policies and benefits available to you as an employee of our company.

At SpringBoard, opportunities for personal and professional growth and development are available to all employees based on performance, ability, and Company needs. To help you learn of the Company's many employment opportunities and our benefit programs, you should become familiar with this Handbook and keep it available for handy reference. The policies in this Handbook apply to all Company employees except where otherwise noted. Where any policy in this Handbook conflicts with controlling law in an applicable jurisdiction, the law of that jurisdiction applies.

As part of an organization dedicated to quality service, the employees of SpringBoard have a special responsibility. We are providing a vital service that is essential to our clients. Therefore, SpringBoard has high standards for all of its employees and expects every member of our team to strive to achieve excellence.

Please feel free to discuss any questions about the guidelines, policies and benefits summarized in this Handbook with your Manager.

**Thank you!**

The Springboard Team

Palmer et al_0008

Palmer et al_0009

# TABLE OF CONTENTS

Welcome to SpringBoard!
TABLE OF CONTENTS                                                         3
DISCLAIMER                                                               3
EMPLOYMENT POLICIES                                                      3
   Categories Of Employment                              3
   Introductory Period                                   3
   Resignation                                           3
   General Rules of Conduct
   Code of Business Ethics                                3
   Equal Employment Opportunity Policy                   3
   Policy Against Harassment                             3
   Attendance and Punctuality                            3
   Dress Code                                            3
   Computer/Internet Use                                 3
   Personal Media and Cell Phones                        3
   Personal Visits                                       3
   Company Telecommunications                            3
   Drug and Alcohol Free Workplace                       3
   Grievance/Open Door Policy-Problem Resolution Procedure    3
   Proprietary and Confidential Information              3
   Protected Patient Information                          3
   Workplace Safety                                      3
   Employment Accident Reporting Procedure(Injury On the Job)    3
   Vaccination History                                   3
PAYROLL POLICIES                                                         3
   Overtime pay procedures                               3
   Paydays                                               3
   Deductions                                            3
   Social Security                                       3
   Report Work Time
   Presentation of Proof of Identity Policy

EMPLOYEE BENEFITS                                                        3
   Holidays                                              3
   Sick days                                             3
   Vacation/Personal Days Policy                         3
   Bereavement Days                                      3
   Health Benefits                                       3
Travel & Lodging Arrangements                                           3
   Travel                                                3
   Lodging                                               3
   Rental Car                                            3
   Per Diem Pay                                          3
EMPLOYEE ACKNOWLEDGMENT                                                 3

Palmer et al_0010

# DISCLAIMER

THE CONTENTS OF THIS HANDBOOK SUMMARIZE PRESENT POLICIES AND PROCEDURES OF THE COMPANY AND ARE INTENDED AS GUIDELINES ONLY. EMPLOYEES SHOULD BE AWARE THAT THESE POLICIES AND PROCEDURES, LIKE ALL POLICIES AND PROCEDURES OF THE COMPANY, MAY BE AMENDED, CHANGED, OR ELIMINATED AT ANY TIME, WITHOUT PRIOR NOTICE, AT THE SOLE DISCRETION OF THE COMPANY.   MOREOVER, DEPENDING ON THE PARTICULAR CIRCUMSTANCES OF A GIVEN SITUATION, THE COMPANY'S ACTIONS MAY VARY FROM ANY WRITTEN OR UNWRITTEN POLICY.

THIS HANDBOOK, AND THE STATEMENTS CONTAINED, REFERRED TO, OR MENTIONED HEREIN, LIKE ALL POLICIES AND PROCEDURES OF THE COMPANY, ARE NOT INTENDED TO AND DO NOT CREATE TERMS OF A CONTRACT OF EMPLOYMENT BETWEEN THE COMPANY AND ANY EMPLOYEE. NOTHING IN THIS HANDBOOK OR OTHER POLICIES OF THE COMPANY SHALL RESTRICT AN EMPLOYEE'S RIGHT TO TERMINATE HIS OR HER EMPLOYMENT AT ANY TIME, AND NOTHING SHALL RESTRICT THE RIGHT OF THE COMPANY TO TERMINATE THE EMPLOYMENT OF ANY EMPLOYEE AT ANY TIME FOR ANY REASON NOT OTHERWISE PROHIBITED BY LAW. THE COMPANY MAY TERMINATE EMPLOYEES WITHOUT CAUSE, WITHOUT REASON, AND WITHOUT PRIOR NOTICE. EMPLOYMENT WITH THE COMPANY IS ON AN "AT-WILL" BASIS, AND EMPLOYEES HAVE NO GUARANTEE OF CONTINUED EMPLOYMENT.  ANY WRITTEN OR ORAL STATEMENT TO THE CONTRARY IS INVALID AND SHOULD NOT, AND MAY NOT, BE RELIED UPON BY ANY PROSPECTIVE OR EXISTING EMPLOYEE UNLESS THE PRESIDENT OF THE COMPANY HAS EXPRESSLY AGREED IN WRITING THAT AN EMPLOYEE'S EMPLOYMENT AT THE COMPANY IS FOR A SPECIFIED TERM.

Palmer et al_0011

# EMPLOYMENT POLICIES

## Categories Of Employment

For purposes of salary administration, eligibility for overtime payments, and certain employee benefits, your job at SpringBoard is classified into one or more of the following categories according to your work schedule:

*Full-time:* per week on
An employee who works an average of 38 hours
a regular schedule

*Category I:* who work in a
Individuals compensated on an hourly basis and
supervisory or non-management capacity. These individuals are offered benefits provided by the Company as provided in this handbook. Over-time pay may be available to *Category I* employees in accordance with applicable law.

*Category II:* individuals
Individuals compensated on a salary basis. These
are not eligible for overtime pay in accordance with applicable law. Company benefits are offered to *Category II* employees as provided in this handbook.

*Category II e:*
Individuals determined by the Board of Directors to be Company Officers. These individuals are not eligible for overtime pay. Company benefits are provided to *Category II e* employees as provided in this handbook.

*Category III:* *Category III*
six months
Individuals hired to work on an hourly basis.
employees typically are scheduled for a period of
or less. *Category III* employees work on assignment at SpringBoard Client locations as temporary employees for the term of the employee's contract with SpringBoard. *Category III* employees are eligible for benefits provided by the Company as provided in this handbook.

You generally will be informed or your initial employment classification and of your status as a *Category I, Category II, Category II e,* or *Category III* employee during your orientation. If you change positions during your employment as a result of promotion, transfer or otherwise, you will be informed by your supervisor.

Palmer et al_0012

**Introductory Period** – *Category I, II, or II e Employees* Only
The first 90 days of employment are an introductory period for all employees during which time your work performance will be examined and evaluated. During the 90-day introductory period, if your supervisor or trainer determines that you have not satisfactorily met the requirements of the position and Company standards and policies, you may be terminated without notice at any time, during or at the completion of the 90-day introductory period.

The successful completion of this period should not be construed as creating a contract or a guarantee of employment for any specific duration.

**Resignation** – *Category I, II, or II e Employees* Only
If you voluntarily decide to resign from your employment with SpringBoard, we request that give the Company at least two weeks notice in advance of your intended date of termination. Such notice should be given in writing to your supervisor. This practice will facilitate the necessary transition of your job responsibilities. At its sole discretion, SpringBoard may require or permit resigning employees to leave prior to the end of the two-week notice period. Employees will be paid for all time actually worked.

**General Rules of Conduct**
The success of our Company depends upon your conduct, pride, courtesy, helpfulness, attitude and contribution to the Company and its mission. Any group of people who work together must abide by a code of conduct.

On or off the job, your conduct reflects upon SpringBoard. Consequently, you are encouraged to observe the highest standard of personal conduct at all times.

Employees are expected to conduct themselves in an appropriate manner as judged by a reasonable person. Failure to abide by professional standards of conduct and the policies and practices of the Company may lead to disciplinary action, including immediate discharge. Examples include:

• Abuse of the sick leave policy and/or falsification of reason for absence from work.

• Abusive or offensive conduct or language.

• Accepting unauthorized person(s) at work site.

• Conflict of interest.

• Disclosing trade secrets or confidential Company information;

• Falsification of documents including pre-employment information.

• Insubordination or refusal to follow an order.

• Job abandonment.

Palmer et al_0013

- Misrepresentation of time worked for self or another employee or violation of other time recording policies or procedures or not following or adhering to designated method of time keeping.
- Misusing Company communication systems.
- Neglect of duty or inability to perform essential job responsibilities.
- Personal use of Company property.
- Physical violence, fighting, disorderly conduct, or verbal or physical intimidation.
- Possession, distribution, sale or use of alcohol, drugs, or inhalants (except those used as prescribed by a licensed health care provider) as prohibited in the Company's policies concerning drug and alcohol use.
- Possession of dangerous or unauthorized materials or weapons while on Company premises or while conducting Company business.
- Tardiness and/or absenteeism.
- Theft, misappropriate or unauthorized use or removal of property belonging to the Company or another person.
- Unauthorized long-distance, toll calls, excessive personal telephone calls, or personal cell phone usage on the job.
- Unauthorized overtime.
- Violation of any Company policy or practice.

Any potentially harmful situations must be reported immediately to SpringBoard managementHHHHGavin Haysg.   Reports can be made anonymously and all reported incidents will be investigated as appropriate.

## Code of Business Ethics

As part of an organization dedicated to quality service, the employees of SpringBoard
have a special responsibility. We are providing a vital service that is essential to our
clients. Therefore, SpringBoard has high standards for all of its employees and expects
every member of our team to strive to achieve excellence.

This Code of Business Ethics is a set of guidelines established to help compliment, and reinforce the existing policies and procedures established by our clients. This code of business ethics shall support the efforts SpringBoard

Palmer et al_0014

takes to ensure compliance with all local, state and federal laws, and regulations.

- All employees are responsible for conducting their jobs in a manner reflecting standards of ethics that are consistent with SpringBoard's core values: Trust, Urgency, Accountability, and Credibility.
- No employee should, at any time take any action on behalf of SpringBoard, Inc. that is known or should be known to violate any laws or regulations.
- SpringBoard employees shall adhere to all corporate and client HIPPA regulations with regard to protected health information.
- At SpringBoard we seek to hire qualified staff without regard to race, color, religion, sex, age, national origin, handicap or disability in compliance with all federal and state laws regarding discrimination.
- SpringBoard is committed to maintaining a work place environment in which employees are free from sexual harassment.
- SpringBoard will not tolerate violence or threats of violence in the workplace, including but not limited to abusive language, threats, intimidation, inappropriate gestures and/or physical fighting by any employee.  These actions are strictly prohibited and may lead to severe disciplinary action up to and including termination.
- SpringBoard recognizes that its employees and clinical staff are its most valuable assets and is committed to protecting their safety and welfare.  Employees are required to report accidents and unsafe practices or conditions to their supervisors or other management staff.  Timely action will be taken to correct unsafe conditions.
- Clinical Employees that are placed at Client facilities shall adhere to those duties and responsibilities with regard to credentialing, reporting, attendance, and performance consistent with their profession, in addition to the rules stated herein.
- SpringBoard prohibits the use or possession of illegal drugs and alcohol abuse on SpringBoard, property or while engaged in company activity.
- SpringBoard provides education for all employees regarding their responsibilities to uphold the code of business ethics as set by SpringBoard .
- SpringBoard prohibits field staff to discuss bill rates of hospitals or special rates of SpringBoard with other healthcare providers.
- SpringBoard prohibits field staff to discuss personal or business affairs of any employee (field or office staff) with any individual not directly involved with the said personal or business affair.
- SpringBoard and it's field employees are prohibited from becoming in involved in the office politics at a Client sites.
- SpringBoard is committed to protecting the privacy, confidentiality and security of personal (education, employment and health) information of its employees. This policy is designed to assure compliance with applicable state and federal laws and regulations.
- SpringBoard employees are required to adhere to company electronic, internet and social media policies at all times.

Palmer et al_0015

- SpringBoard is committed to protecting its own and its client's trade secrets, proprietary information and other internal information.
- SpringBoard employees are not to solicit employees or engage in activities competitive to SpringBoards business interests.
- It is the desire of SpringBoard to provide authorized third parties with information whenever requested while committing to our responsibility to control the release of information to protect the privacy and confidentiality of the employee and/or corporate information.
- Employees are not authorized to issue any statement, written or oral, to any news media representative or grant any public interview pertaining to the company's operations or financial matters.

SpringBoard has an open door policy to provide for effective communication between employees and to encourage employees to freely discuss ethical issues or matters of mutual concern. It is the Company's expectation that most incidents will be resolved through effective employee interaction. However, should a problem persist that you believe is detrimental to you or SpringBoard immediately contact a member of management. All reports and inquiries are handled confidentially to the greatest extent possible under the circumstances.

## Equal Employment Opportunity Policy

It is the policy of SpringBoard to be an equal opportunity employer. Employment and advancement opportunities are open to qualified applicants and employees without regard to race, color, sex, age, marital status, religion, national origin or ancestry, citizenship, handicap or disability, veteran's status, or any other characteristic protected by federal, state, or local law. In addition, SpringBoard complies with applicable state and local laws governing nondiscrimination in every Company location and facility.

## Policy Against Harassment

It is the policy of SpringBoard to promote a productive work environment and not to tolerate verbal or physical conduct by any employee that harasses, disrupts, or interferes with another's work performance or that creates an intimidating, offensive, or hostile environment.

Employees are expected to maintain a productive work environment that is free from harassing or disruptive activity. No form of harassment will be tolerated, including harassment for the following reasons: race, national origin, religion, disability, pregnancy, age, military status, or sex.

Each employee has a responsibility to keep the workplace free of any form of harassment, and in particular, sexual harassment. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when

Palmer et al_0016

- submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;

- submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or

- such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.

Other sexually harassing or offensive conduct in the workplace, whether committed by supervisors, managers, nonsupervisory employees, or nonemployees, is also prohibited. This conduct includes:

- Unwanted physical contact or conduct of any kind, including sexual flirtations, touching, advances, or propositions;

- Verbal harassment of a sexual nature, such as lewd comments, sexual jokes or references, and offensive personal references;

- Demeaning, insulting, intimidating, or sexually suggestive comments about an individual's personal appearance;

- The display in the workplace of demeaning, insulting, intimidating, or sexually suggestive objects, pictures, or photographs;

- Demeaning, insulting, intimidating, or sexually suggestive written, recorded, or electronically transmitted messages.

Any of the above conduct, or other offensive conduct, directed at individuals because of their race, national origin, religion, disability, pregnancy, age, or military status is also prohibited.

Supervisory discussions of performance issues or work problems do not constitute harassment.

Employees aware of any violation of this policy must report the circumstances to the employee's supervisor. If it is not appropriate to report violations to your supervisor, reports must be made to another member of SpringBoard management.

Reports of sexual harassment or any unlawful discrimination will be completely and timely investigated. The Company will take reasonable efforts to maintain confidentiality during the investigation. Employees are required to cooperate in any investigation. If the results of the investigation confirm that the offense likely occurred, or that action is otherwise required, appropriate disciplinary action up to and including discharge may be taken against any person violating this policy.

Palmer et al_0017

The Company prohibits any form of retaliation against employees for bringing complaints or providing information about harassment.

**Attendance and Punctuality**

SpringBoard and its employees are proud to consistently serve our clients in a timely and efficient manner. Therefore, your attendance and punctuality are very important. SpringBoard expects all employees to assume diligent responsibility for their attendance and promptness.

Because excessive absenteeism and lateness interferes with the service to our clients and places an unfair burden upon co-workers, it will not be tolerated. Those who are excessively absent or late in the judgment of the Company will be subject to corrective action, up to and including termination.

*An employee must personally report each lateness and absence directly to his or her supervisor in advance of the designated start time.* You must call your supervisor each day of an absence unless you have been granted an authorized medical leave. Please see additional requirements for absences due to sickness in the Sick Pay policy, below.

Absences not reported to a supervisor may result in corrective action, up to and including termination. Unreported absences of three consecutive shifts may be considered job abandonment and deemed a voluntary resignation of your employment.

**Dress Code**

An emphasis on quality and professionalism are among the traits that distinguish SpringBoard from other companies in our industry. As representatives of our Company, all employees are expected to dress in appropriate business attire at all times. You should use good judgment in the choice of your work clothes worn at the office and when representing the Company at any location. Please remember that tattered jeans, T-shirts, and halter tops are never considered to be suitable attire.

Based on customer contact and other business-related requirements, some employees may adopt dress requirements specific to their needs. Ask your supervisor about specific requirements for your position.

Your failure to abide by the dress standards established by the Company or your supervisor may result in corrective action, up to an including termination. You may also be sent home from work to change into appropriate attire without pay before being permitted to work.

**Computer/Internet Use** *—Category I, II, or II e Employees* Only

To remain competitive, better serve our customers, and give our workforce the best tools, SpringBoard continues to use various means of electronic communication and information exchange. This means that many of our

Palmer et al_0018

employees have access to one or more forms of SpringBoard-provided media and services, including computers, e-mail, and the Internet.

<u>Employer-provided media</u>. SpringBoard encourages the use of these media because they can streamline communications and because they can be valuable sources of information about vendors, customers, technology, and new products or services. Employees should remember, however, that company-provided electronic media and services are the SpringBoard's property and as such they are designed to foster company productivity and promote organizational goals.

SpringBoard respects employees' rights to engage in whistleblowing, union organizing, and other forms of free speech and recognizes it cannot control what employees do on their own time. SpringBoard provides the following policy to explain its views and to outline general principles for using SpringBoard-provided electronic media and services or employees' own e-mail systems.

<u>Actions Affected by Policy</u>
This policy applies to all electronic media and services that are:
• accessed on or from company premises,
• accessed using company computer equipment or via company-paid access methods, or
• used in a manner that identifies the individual with SpringBoard.

<u>Prohibited Communications Using Employer-Provided Systems</u>
Electronic media provided by SpringBoard cannot be used for knowingly transmitting, retrieving, or storing any communication that:
• is discriminatory or harassing;
• appears derogatory to any individual or group;
• is obscene;
• can be seen as defamatory or threatening;
• reveals company trade secrets, development plans, or other information that could harm SpringBoard; or
• is used for any purpose that is illegal or contrary to SpringBoard's policy or business interests.

<u>Personal Use of Employer-Provided Systems</u>
Electronic media and services are provided by SpringBoard primarily for employees' business use. Excessive use of electronic media (sending or receiving) for personal, nonbusiness purposes is prohibited.

<u>Access to Employees' Communications on Workplace Systems</u>
SpringBoard can monitor electronic information created and/or communicated by employees using e-mail, word processing, utility programs, spreadsheets, Internet, and similar electronic media.

SpringBoard reserves the right to review employees' electronic files and messages to the extent necessary to ensure that electronic media and

**Palmer et al_0019**

services are being used in compliance with the law, this policy, and other SpringBoard rules.

Employees should assume that electronic communications are not private. They also should keep in mind that whatever they send in e-mails using SpringBoard systems will be in those systems or on the Internet for a long time.

Appropriate Use of Workplace Systems
Employees should try not to cause network congestion when they send or receive e-mail or use any other electronic media and services.

Participation in Online Forums
SpringBoard recognizes that participation in some online forums can be important as a means of finding answers to technical problems by consulting newsgroups devoted to the technical area.

Employees should remember that any messages or information sent on SpringBoard-provided facilities to one or more individuals via an electronic network—for example, Internet mailing lists—are statements that can taint SpringBoard's reputation or products and services. Employees should include the following disclaimer in all of their postings to public forums: "The views, opinions, and judgments expressed in this message are solely those of the author and do not reflect the views, policies, or goals of SpringBoard."
Communications must not reveal information about SpringBoard processes, techniques, trade secrets, or confidential information and must not otherwise violate this or other SpringBoard policies.

Policy Violations
Employees who abuse the privilege of company-facilitated access to electronic media or services can face discipline and risk losing their access to SpringBoard's communications systems.

**Personal Media and Cell Phones**– *Category I, II, or II e Employees* Only
SpringBoard recognizes that many employees have personal electronic equipment such as cellular phones, camera phones, PDAs and other similar items.

Employees cannot use their camera phones to photograph any client, customer, partner, or co-worker without the person's permission. SpringBoard does not allow employees to use camera phones' photographic function in restricted or private areas that are defined as changing rooms, locker rooms, and restrooms. Employees also cannot photograph any part of SpringBoard's facilities where financial or personnel records are stored.

Excessive use of cellular phones for personal and non-business use and text messaging is distracting to other employees and disruptive to company business, and, therefore, is prohibited.  Violation of these rules may result in corrective action, up to and including termination.

Palmer et al_0020

**Personal Visits**– *Category I, II, or II e Employees* Only
Personal visits during work hours interrupt productivity, distract other employees, and may expose confidential information to visitors. Therefore, personal visits should be kept to a minimum, and are discouraged by persons who pose a potential risk to the Company, such as employees of a competitor. All personal visitors are not allowed in work areas without a Company escort.

**Company Telecommunications**– *Category I, II, or II e Employees* Only
SpringBoard recognizes that employees may need to communicate with family members or conduct arrangements for personal matters during the work day. However, office telephones are to be used only for the transaction of Company business, or for personal emergency reasons. The placement of long distance calls by the employee for personal reasons or receipt of such phone call via the Company's 800 business line is strictly forbidden. Employees must reimburse the company for any personal calls that are charged to the company.

The use of SpringBoards's telecommunications systems to make or send fraudulent, unlawful, or abusive calls or messages is prohibited. Employees are to report any threatening, intimidating, or harassing telephone calls to SpringBoard management.
Any employee identified as the initiator of fraudulent, unlawful, or abusive calls or messages is subject to disciplinary action and possible criminal prosecution.

**Drug and Alcohol Free Workplace**
SpringBoard believes a drug-free workplace enhances the safety of our employees, our clients, and the public, enhances employee productivity, and ensures the quality of our products and service. The sale, use, or possession of alcohol, narcotics, drugs, or controlled substances (other than medication prescribed by a doctor where the employee's supervisor is notified of the prescription) while on the job, on Company property, or in or on a Company vehicle or other Company equipment is strictly prohibited, as is working under the effects of such substances. Employees who violate this policy, and the procedures described in this policy summary, are subject to discipline, up to and including termination. Submitting to drug and alcohol testing under the procedures described in this policy summary, and passing testing conducted under this policy, are conditions of employment. An employee's reasonable consumption of alcohol at company-sponsored events or as otherwise permitted by the Company is not a violation of this policy.

*Definitions.*

"Alcohol" means ethanol, isopropanol, or methanol.

**Palmer et al_0021**

"Drugs" means marijuana, cocaine, opiates, phencyclidine (PCP), amphetamine, and substances specified in Schedule I or Schedule II of the Controlled Substances Act, 21 U.S.C. § 811, et seq.

"Employee" means any compensated employee, including officers, directors, and supervisors.

"Sample" means urine, blood, breath, saliva, hair, or other substances from the person being tested, as designated by the Company.

### *Drug and Alcohol Testing.*

**A.    Individuals Subject to Testing and the Circumstances Under Which Testing May Be Required.**

Prospective employees are subject to testing for the presence of drugs, and current employees are subject to testing for the presence of drugs and alcohol.    The Company may test prospective and current employees under the following circumstances:

1.    Job Applicants.    All applicants considered for a job opening, including former employees, current employees transferring to another position, and employees returning from a leave, may be tested for the presence of drugs as part of the application process.  If the applicant's drug test is positive, the applicant will not be considered for employment.

2.    Reasonable Suspicion.  The Company may test employees suspected of violating the Company's drug-free workplace policy where such condition may adversely affect the employee's job performance or the work environment.

3.    Random Testing.  The Company may, in its discretion, periodically perform unannounced random drug and alcohol tests of employees or groups of employees.  During these random tests, the Company may test a sample of employees, a group of employees at one or more facility, or all employees.

4.    Post-Accident Testing.  Any employee who is involved in a work-related injury or accident whom the Company reasonably believes may have contributed to the accident may be required to submit to a drug and alcohol test as soon as practicable after the accident.

5.    Additional Testing.  Additional testing also may be done as required by state, federal, or local law; for any job-related purpose consistent with business necessity; to investigate possible individual employee impairment;   to   maintain   the   safety   of   employees,

customers, clients, and the public; to maintain productivity, quality of products and services, security of property and information; and as deemed necessary by the Company. If federal, state, or local law requires testing, the Company may test pursuant to that law even if the testing procedures under that law do not conform to all of the provisions of this policy, and other Company policies may describe testing required under federal, state, or local law. If an employee tests positive and continues as an employee, the employee may be required to undergo additional periodic testing as a condition of continued employment.

**B.    Testing Procedures.**

1.    All prospective and current employees asked to submit to a drug or alcohol test will be asked to sign a form consenting to the test. **Failure to submit to a drug or alcohol test under this policy will be grounds for discipline, up to and including dismissal.**

2.    Prior to any drug or alcohol test, prospective or current employees have the right to notify the person performing the test of any information that may be considered relevant to the test, including the identification of currently or recently used prescription or nonprescription drugs or other relevant medical information.

3.    Drug and alcohol testing normally will occur during or immediately before or after an employee's regularly scheduled work period. For current employees, time spent engaging in the test will be considered work time for the purposes of compensation and benefits.

4.    The Company will pay all costs associated with any drug or alcohol testing of current employees under this policy, and it reserves the right to require prospective employees to pay for drug testing under this policy. In addition, the Company will reimburse current employees for reasonable transportation costs if the required test is conducted at a location other than the employee's normal work site.

5.    Prospective and current employees subject to testing may be required to provide picture identification to the person conducting the test.

6.    The following is a list of the substances as to which the Company may test as of August 1, 1998. If this list changes in the future, prospective or current employees subject to testing will be provided with an updated list of substances prior to any testing.

- **Alcohol**
- **Amphetamines** (Amphetamine; Methamphetamine)
- **Cannabinoids** (THC-COOH; marijuana)
- **Cocaine Metabolite**(Benzoylecgonine)

Palmer et al_0023

- **Opiates** (Codeine; Morphine)
- **Phencyclidine** (PCP)

7.    The procedure for collecting testing samples will be given to employees prior to submitting to any test under this policy.

8.    Samples will be tested using an Enzyme-Multiplied Immunoassay Technique (EMIT).    Positive drug test results will be conCompanyed using a different chemical process than was used in the original drug test.    The second or conCompanyatory drug test will be a chromatographic technique such as gas chromatography-mass spectrometry or another comparably reliable analytical method.    If these tests change, employees will be notified of the change prior to submitting to a drug or alcohol test.

## C.    Employee Rights.

In addition to any other rights discussed in this policy, employees have the following rights with regard to drug and alcohol testing under this policy:

- Upon request, employees have the right to obtain the written test results of any drug or alcohol test.

- Upon request, employees have the right to explain, in a confidential setting, a positive test result.

- To the extent practicable, the Company will maintain the confidentiality of the results of drug and alcohol testing.    The Company may use the test results, and any communications received in connection with the testing, to make employment decisions regarding the tested employee.    The Company also may disclose the test results:    (1) to the tested employee or prospective employee or any other person designated in writing by that employee or prospective employee; (2) to individuals the Company designates to receive and evaluate test results or hear the explanation of the employee or prospective employee; (3) to an arbitrator, mediator, court, and/or governmental agency as authorized by state or federal law; (4) in any proceeding related to the drug testing or the employee's employment with the Company; or (5) as otherwise allowed by law.

## D.    Potential Disciplinary Action.

Upon violation of this policy, on receipt of a positive drug test or alcohol impairment test result that indicates a violation of the Company's drug-free workplace policy, or if a prospective or current employee refuses to provide a drug testing or alcohol impairment testing sample, the Company

Palmer et al_0024

may, in its discretion, use the violation of the policy, the test result, or test refusal as the basis for taking any disciplinary action, including the following:

1.    Suspension of the employee, with or without pay, for a designated period of time.

2.    Termination of employment.

3.    Refusal to hire a prospective employee.

Any questions regarding this policy should be directed to SpringBoard management.

**Greviance/Open Door Policy-Problem Resolution Procedure–** *Category I, II, or II e Employees* Only

SpringBoard has an open door policy to provide for effective communication between employees and to encourage employees to freely discuss matters of mutual concern.  Such issues may include any matter which is of serious concern to the employee, including corrective actions, promotions, work schedules, performance appraisals, sexual harassment, or other forms of discrimination or harassment.  It is the Company's expectation that most incidents will be resolved through effective employee interaction.  However, should a problem persist that you believe is detrimental to you or SpringBoard, you must follow the procedure described below to bring your complaint to management's attention.

<u>Procedure</u>

SpringBoard accepts complaints from staff and/or customers who believe they have experienced a violation of their rights, or feel like they are dissatisfied with Springboard.  The following guidelines shall be followed in resolving                                                                                              complaints:

(Step 1) Discuss, or prepare a written summary of grievance with immediate supervisor (Relationship Manager).  If complainant feels the discussion would be uncomfortable or inappropriate, complainant may skip step 1 and proceed directly to step 2.

(Step 2) If problem is not resolved with direct supervisor and/or if complainant feels the discussion with the direct supervisor would be uncomfortable or inappropriate, complainant is encouraged to setup a meeting with the next level of management. In an effort to resolve the problem, manager will consider the facts, may conduct an investigation, and may review the matter with other members of management.  The complainant will receive a prompt response regarding the complaint shortly after the meeting.

(Step 3) If complainant is not satisfied with the decision as noted in step 2, complainant may prepare a written summary of their concerns and request a

review by senior management. After examination of the facts, the complainant will receive a prompt response regarding the complaint shortly after the meeting.

SpringBoard does not tolerate retaliation against employees who use this procedure. The Open Door Policy should not be construed, however, as preventing, limiting, or delaying SpringBoard from taking corrective action against any employee, up to and including termination.

**Proprietary and Confidential Information**
SpringBoard has many valuable assets, including its employee relationships, physical property, trade secrets, and confidential information. Company assets include trademarks, trade names, computer software and data, technical and business know-how and expertise, and any information marked "confidential".

Without the prior written approval of SpringBoard, an employee may not take any of the following actions:

-   Sell, transfer, give, loan, or otherwise dispose of any Company asset,

    other than in the ordinary course of authorized Company business;

-   Use any Company asset (including any Company personnel) for the

    benefit or profit of the employee or any person outside of SpringBoard; or

-   Disclose, directly or indirectly, any trade secret, confidential information,

    or other proprietary assets to any person outside SpringBoard or any

    person within SpringBoard who does not need to know the information.

Any employee aware of the loss, theft, misuse, or inappropriate disclosure of any Company assets or proprietary assets should immediately report it to his or her supervisor. Supervisors receiving such reports shall handle them in a careful and thorough manner and immediately report all details to senior management.

Each employee who originates trade secret or confidential information must identify, clearly label as "confidential," and appropriately handle all such information. However, the lack of a specific "confidential" legend does not waive SpringBoard's rights to the information or affect an employee's obligations described in this policy.

**Palmer et al_0026**

Employees may be asked to sign an agreement at the time of hire, which describes their confidentiality obligations.

## Protected Patient Information

Employees will be trained on, receive, and must sign a separate agreement regarding patient confidentiality and other HIPAA-related matters.

## Workplace Safety/Accident Reporting Procedure

SpringBoard is committed to providing a safe and healthy working environment. The Company makes every effort to comply with relevant federal and state occupational health and safety laws and to develop the best feasible operations, procedures, technologies, and programs conducive to such an environment.

SpringBoard 's policy is aimed at minimizing the exposure of our employee's and visitors to our facilities to health or safety risks. In this regard, your responsibilities include:
- Exercising reasonable care and good judgment at all times to prevent accidents and injuries.
- Immediately reporting to your supervisor and seeking first aid for any injury.
- Reporting possibly unsafe conditions, equipment, or practices to your supervisor.

Palmer et al_0027

**Employee Accident Reporting Procedure**

All workplace accidents must be reported first to the employee's immediate supervisor, then to Springboard Staffing at 866-465-6286.  Springboard Staffing will then fax a form that must be completed and faxed back to BOTH Diversified Human Resources (DHR) at 602-553-4685, and SpringBoard, Inc. at 877-890-5343 within 24 Hours of the incident.  Failure to do so may result in denial of the claim by the insurance carrier or a delay in benefits.  DHR Claims Department can be contacted with any questions at 480-941-5588. Any forthcoming paperwork and billing in reference to the claim must be forwarded to the fax numbers above, so they can be submitted and processed within a timely manner for the claim. If an Employee refuses medical treatment, the reporting form must still be filled out, faxed to BOTH Springboard and DHR, and state "N/A" under medical treatment.
The Employee/Traveler must submit to a post-accident drug screen within 24-hours of the accident, and additional information will be given to the employee upon submission of the claim information.  Employee must **NOT** go to an Emergency Room unless Emergency Room care is absolutely necessary or it will not be covered by the insurance carrier.
The contact information for the medical facility to obtain insurance information is as follows:

DHR Claims Department
2735 E. Camelback Road
Phoenix, AZ 85016
Tel (480)-941-5588 Fax (602)-553-4685 or Toll Free (888)-870-5588.

*Category III* employees who receive a needle stick injury must be tested for HBV and HIV within 72 hours of the injury as a baseline test.

**Vaccination History –** *Category III Employees* Only
Employees are responsible for providing to the Company requested copies of original medical documents detailing their history of prior vaccinations and immunity testing. Requirements of client companies may vary due to internal politics and the profile of the local and patient populations, and employees may be required to obtain additional immunizations and/or immunity testing prior to assignment(s).   Minimum requirements typically include the Hepatitis B injection series, TB test within the past year, and MMR and Varicella immunity.  Employees authorize the Company to release any or all of these medical records to Client companies upon their request.  The cost of any required testing or vaccinations are borne by the employee, however, the Company may facilitate any such procedures with the consent of the employee. Failure to comply with any required testing or vaccinations will result in discipline, up to and including immediate termination.

# PAYROLL POLICIES

*Category I, II, or II e* **Employees.**

Palmer et al_0028

**Overtime pay procedures**
SpringBoard's standard work week for hourly full-time employees is 37.5 hours per week, 7.5 hours per day, with up to an additional hour per day of unpaid time scheduled for lunch. If you are classified as a *Category I* employee, you will receive compensation for overtime work as follows:
- You will be paid "straight time" (i.e., your regular hourly rate of pay) for all hours
    worked between 37.5 and 40 hours in any given work week.
- Any hours worked in excess of 40 hours in a week are paid at one and a half
    times your regular hourly rate.
Sick leave, vacation time, personal time, and other approved PTO will not be counted in the calculation of hours worked  for overtime purposes.

**Paydays**
Employees are normally paid bi-weekly, on every other Friday, for the two-week period ending the following Saturday at midnight. When a payday falls on a holiday, payment will be made on Thursday.

**Deductions** Certain payroll deductions are required by law and are automatically deducted from your paycheck. Automatic deductions include social security contributions, federal income tax, state income tax and applicable local wage taxes. Other deductions may also occur as set forth in this handbook or other Company policies.

**Social Security**
You are covered under the Federal Social Security Program from the day your employment with SpringBoard begins.

Each payday, a deduction from you paycheck is made and matched with an equal contribution made by SpringBoard. The combined amount is deposited with the Federal Social Security Account, and you earn credit toward eligibility for retirement and/or disability pension benefits, coverage for hospitalization benefits under Medicare, as well as insurance for your family in the event of your death.

***Category III* Employees.**
**Report Work Time.**
Employees are responsible for the accurate and timely completion of their time sheet. Each time sheet must include the following information:
    1) Facility Name and Location;
    2) Employee Name and address;
    3) Employee signature;
    4) Date(s) of actual work, including starting time, ending time, and lunchtime taken;
    5) Date(s) of "on-call" time, and "call-back" time, if applicable.

Palmer et al_0029

In order to be processed for payment, the employee's direct supervisor at the Client company must validate the time sheet by signing in the space designated "Supervisor Signature".

Time sheets must be faxed as soon as work has been completed for the workweek – whether actual work for the week ends BEFORE Saturday, or ON Saturday.  To receive bi-weekly pay, timesheets must be faxed BEFORE OR ON each Monday by 10:00 AM MST.  Employees submitting time sheets after 10 am may not be paid on time.  A $25 administrative fee can be deducted for employees insisting on payment after the cut-off period.

Paychecks are issued to employees on a bi-weekly basis (paid every other Friday).  Paychecks will only be issued when completed, validated time sheet(s) are timely faxed to the Company at 877.890.5343.

Employees are responsible for ensuring that the Company has a current mailing address for their paychecks.  If a paycheck is lost or stolen, a new paycheck can only be reissued after 30 days has elapsed from the original date of issue.

Employees are encouraged to enroll in the Company's Direct Deposit program upon hire.  Enrollment generally is not effectuated until the second payroll cycle.  After enrollment, any direct deposit changes must be submitted promptly to the Company and a new Direct Deposit Authorization form completed and submitted.  In the event of an interruption in employment occurs that is in excess of 60 days, a new Direct Deposit Authorization form will be required to resume direct deposit.

**Presentation of Proof of Identity Policy**
All employees must meet the standards the Department of Homeland Security sets forth in the I-9 Employment Eligibility Verification Form.  If the employee is unable to meet with a SpringBoard Inc. representative they must fill out a Remote Hire Notary Notice Form; which must be notarized.  SpringBoard Inc. requires a copy of the front of all identification used for the I-9 form.  Springboard also performs an E-Verify search on all employees.

Palmer et al_0030

# EMPLOYEE BENEFITS

**Holidays**
The Company observes the following holidays:
- New Year's Day
- Memorial Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Thanksgiving Friday
- Christmas Day

When a holiday falls on a Saturday, it will be observed on the preceding Friday. If it falls on a Sunday, it will be observed on the following Monday.

Full-time *Category II or Category II e Employees* are eligible to receive pay on Company-observed holidays. If a paid holiday falls within an eligible employee's PTO, the holiday will not count as PTO used.

*Category III Employees* may use available PTO for Company-observed holidays once all of the following conditions have been met:
- The employee has worked a minimum of 32 hours during the workweek in which the Company-observed holiday falls; and
- The employee's contract with the Client company does not already guarantee 40 hours of pay for the week in which the Company-observed holiday falls.

*Category I Employees* who perform no work on Company-observed holidays do not receive pay.

**Sick days**
You are expected to come to work when you are healthy. Otherwise, the Company provides five days of paid sick leave to all eligible employees.

Eligibility.
Full-time *Category II or Category II e* Employees are eligible to receive pay on an accrual system, which means that employees accrue sick leave as they work. Eligible employees accrue sick leave at the accrual rate of 0.31 days per pay period for a total maximum annual accrual of 8 work days. Employees may accrue up to a maximum of 16 days at which point they will cease to accrue additional sick days until they have used sick days and reduced their accrual below the total maximum accrual allowed.

Accrued sick leave does not vest until an employee has completed 60 days of continuous employment. In other words, an employee in the first 60 days of employment accrues, but is not eligible to use, sick leave. Once an employee has completed 60 days of employment, the employee is eligible to

such leaves (either paid or unpaid) may be granted at the sole discretion of your supervisor, depending on the circumstances.

**Health Benefits**
Employees who have completed 30 days of continuous, active employment and have worked an average of 32 hours or more per week during those 30 days are eligible to sign up for health insurance through the Company.

Health insurance generally is effective the first of the month following 30 days of continuous employment, so long as the employee remains actively employed with the Company, has completed and returned the appropriate enrollment forms, and complied with all applicable enrollment requirements. Enrollment generally must be completed within 90-days of hire or during the open enrollment period, which is in June for benefits to be effective July 1st.

If, after the date insurance becomes effective, an employee works less than 32 hours per week or terminates employment, the employee will be offered COBRA insurance coverage.  In such a case, insurance coverage will end on the last day of the month in which the employee met the eligibility criteria. If an employee works less than 32 hours per week or terminates employment prior to the date insurance becomes effective, the employee will receive no insurance coverage benefits nor any COBRA coverage.

While being actively employed with the Company, the Company will pay a portion of the major medical insurance premiums.  Payroll deductions for insurance premiums do not constitute insurance coverage.  Insurance coverage is based on meeting the eligibility requirements of all applicable plans.

# Travel & Lodging Arrangements
*Category III* Employees Only

All travel, lodging and per diem pay arrangements for Category III employees will be managed by the Company's housing department along with your Relationship Manager.  Depending on the employee's assignment, employees will have no travel and/or lodging arrangements, will receive a travel/relocation reimbursement and/or lodging allowance, or will have their travel and/or lodging paid directly ("Direct Pay") by the Company.

Travel and/or lodging expenses do not constitute compensation for hours of service; instead, these are necessary traveling expenses, or relocation expenses incurred in furtherance of the interests of the Company and the Client. Accordingly, employees who fail to actively work the hours scheduled for their assignment are liable to the Company for that portion of the lodging, travel, relocation reimbursement, and/or per diem pay that is proportionate to the amount of the scheduled hours not worked.   Specifically, the Company may deduct from employee pay a pro rata amount of any Direct Pay costs for travel, lodging, or per diem amounts if an employee fails to

**Palmer et al_0034**

use accrued sick leave.   After an employee has completed 60 days of continuous employment, sick leave vests as it accrues.

*Category III* employees are not eligible to receive sick pay separate from the vacation/personal time provided below.  *Category III* employees are required to follow the procedures outlined below in the case of an absence due to sickness.

*Category I* employees are not eligible to receive sick pay.  *Category I* employees are required to follow the procedures outlined below in the case of an absence due to sickness.

Procedure.
Employees must call their manager no less than 60 minutes prior to the start of their scheduled shifts to notify the Company that they will not be in. Employees must call their manager EACH day that they will be absent.

If employees are absent because of illness for three (3) or more consecutive shifts, the Company may require medical certification to support the reason for the absence.  If medical certification is required, the employee must supply the medical certification within five (5) days of the Company's request or as soon as is reasonably possible.   Failure to submit the requested information or submission of untimely, inadequate, or incomplete medical certifications, may result in denial of paid sick leave, disciplinary action, and/or any leave previously taken may be considered unapproved and unauthorized.

Employees who are unable to return to work following the expiration of their sick leave benefits or who are absent for seven (7) or more consecutive shifts due to a medical reason must notify their supervisors immediately to apply for a leave of absence.   Leaves of absence will only be granted in the discretion of the Company or as required pursuant to applicable law.

The Company may require employees to provide a physician's release prior to returning to work from an absence due to illness or injury.

Sick leave absences will not be considered time worked for purposes of calculating overtime.

Accrued sick pay is not paid out upon termination of employment.

**Vacation/Personal Days Policy**
SpringBoard grants paid time off (PTO) to eligible employees pursuant to the following policy.

Eligibility.
Full-time *Category II* and *Category II e* employees accrue PTO per the table below.  The amount of PTO employees are eligible to accrue is based upon years of service measured from the employee's date of hire.

**Palmer et al_0032**

| YEARS OF SERVICE | DAYS PER YEAR | ACCRUAL PER PAY PERIOD | MAXIMUM ACCRUAL |
|---|---|---|---|
| 0-1 | 8 | 0.30 | 8 |
| 1-4 | 10 | 0.38 | 20 |
| 5-9 | 15 | 0.58 | 30 |
| 10+ | 20 | 0.77 | 40 |

Accrued PTO does not vest until an employee has completed 60 days of continuous employment. In other words, an employee in the first 60 days of employment accrues, but is not eligible to use, PTO until the employee has completed 60 days of continuous employment. After an employee has completed 60 days of continuous employment, the employee is eligible to use PTO accrued to date and PTO accrued from that point forward vests as it accrues.

Employees may accrue PTO up to the total maximum accrual indicated in the schedule above. Employees who have accrued PTO up to the total maximum accrual amount will cease to accrue any additional PTO until they have used PTO and reduced their accrual below the total maximum accrual allowed.

PTO will not accrue while an employee is on an extended leave of absence.

Upon termination of employment, employees will be paid for unused PTO that has been accrued though the last day of work. If an employee leaves within the first 60 days of employment, PTO will not have vested, and, therefore, a payout will not be made.

*Category III* employees are not eligible to receive PTO.

*Category I* employees are not eligible for PTO.

Procedure.
Vacation/Personal time off days must be approved by and scheduled in advance with your supervisor. In general, employees should request approval for PTO at least 30 days prior to the first day of the requested PTO. Because of business needs, some departments may refuse to permit scheduling of PTO during certain time periods.

PTO will not be considered as time worked for purposes of calculating overtime.

**Bereavement Days**
Full-time *Category I, Category II* and *Category II e* employees will be given up to three paid bereavement days due to the death of an immediate family member. For purposes of this policy, an immediate family member is defined as a spouse, parent, child, brother, or sister. One paid bereavement day will be allowed in the event of death of other close relatives, including grandparent, cousin, aunt, uncle, niece, nephew, or in-law. Extensions for

Palmer et al_0033

rental agreement, the Company may deduct the amount of the excess expenses from the employee's pay.

Insurance coverage for the employee's use of the rental car will be provided in accordance with the terms and conditions specified in the rental agreement. Insurance coverage is only valid for the employee driver, and, therefore, employee drivers may not allow other drivers to operate the rental car provided by the Company. Any loss, penalties, or fees associated with but not limited to: 1) abuse of the car or violation of rental agreement conditions; 2) driving recklessly or while under the influence of alcohol or a controlled substance; 3) failure to report an accident to the police and complete and accident report; 4) fraudulent or misrepresentation to obtain the car; 5) use of the car for an illegal purpose; and 6) any other conduct that results in loss or liability to the Company are the employee's responsibility. The Company and Client company expressly disclaim any liability associated with the above, and, therefore, employees are strongly encouraged to obtain additional liability insurance at their own expense.

**Per Diem Pay**
The Company will notify those employees who will receive per diem pay. Per diem pay is available to employees on assignment to help provide coverage for food, parking, and other ancillary expenses.

Both the Client Company and the Company must comply with applicable IRS and governmental guidelines for tax purposes, and, therefore, tax-free per diem payments will be limited pursuant to IRS guidelines. Accordingly, payments in addition to hourly wages and non-taxable per diem pay are subject to applicable taxes.

Palmer et al_0036

work a minimum number of hours at the assignment or otherwise fails to complete the assignment in accordance with applicable law.

**Travel**

All required air travel will be provided by the Company via Direct Pay, however, the employee is responsible for any fees or penalties applied for changes made to the original air travel reservation. Employees who elect to use a personal vehicle for travel to an assignment may receive relocation reimbursement as follows. Prior to travel, the Company will determine the cost of air travel to the location. The Company at its sole discretion may reimburse employee for baggage costs incurred during air travel to and from an assignment. Baggage reimbursement shall not exceed $25.00 each way.($50.00 round trip). Employee must provide a receipt in order to receive baggage reimbursement. Reimbursement will be paid out on a regularly scheduled pay period. The Company may provide a relocation reimbursement to employees for travel in a personal vehicle up to the cost of a round trip airline ticket to the assignment location. Relocation Reimbursement will occur in two steps. Fifty percent of the air travel cost will be included in the employee's first paycheck. The remainder will be included in the employee's final paycheck for work at the location. Employees who fail to complete their assignment will forfeit the final relocation reimbursement payment for their travel and may be required to repay the initial reimbursement payment through a payroll deduction or other means in the discretion of the Company.

**Lodging**

Lodging expenses during an assignment are limited to the cost of the room (including sales tax) and $120 per month to be applied towards utilities, phone and/or cable service. Where lodging is provided via Company Direct Pay, the Company will only assume responsibility for reasonable rent, utilities, or other necessary services. Any lodging expenses in excess of that which is reasonable (generally considered in excess of $120 per month) are the employee's responsibility and will not be paid by the Company. Accordingly, any additional expenses, such as setting up phone and cable service, internet connectivity, phone calls, cleaning fees, food, pet fees, video rental, loss of deposit moneys are the employee's responsibility and may be deducted from the employee's pay.

Employees are also responsible for their personal belongings. The Company, the Client Company, or any lodging provider expressly disclaim any liability for any loss or damage to an employee's personal belongings. Employees are strongly encouraged to obtain renter's insurance at their own expense.

**Rental Car**

Where a rental car is provided by the Company via Direct Pay, employees are required to comply with all terms and conditions of the applicable rental agreement, including returning vehicles with the proper amount of fuel to avoid excess expenses. In the event the Company incurs any rental car expenses on behalf of the employee in excess of that contemplated in the

Palmer et al_0035

COPY

LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Kaitlyn A. Redfield-Ortiz
State Bar No. 030318
Natalie B. Virden
State Bar No. 031609
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nicholas.enoch@azbar.org

Attorneys for Plaintiff

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

CV 2015-003285

| | |
|---|---|
| PALMER, ADAM J., a single man; MORRISON, WILLIAM J., a single man; PHILLIPS, SARAI, a single woman; and a class of others similarly situated, | Case No.: |
| | **CERTIFICATE OF COMPULSORY ARBITRATION** |
| Plaintiff, | |
| v. | |
| HAYS, GAVIN and NANCY, husband and wife; and SPRINGBOARD, INC., an Arizona Corporation, | |
| Defendants. | |

The undersigned certifies that they know the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certify

1-Complaint

that this case is not subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this 6th day of March 2015.

LUBIN & ENOCH, P.C.

Nicholas J. Enoch, Esq.
Attorneys for Plaintiff

Original of the foregoing
Complaint filed this 6th
day of March, 2015, with:

Clerk of Superior Court
201 West Jefferson Street
Phoenix, Arizona 85003


/s/Amanda Zelisko

2-Complaint

COPY

**In the Superior Court of the State of Arizona**
**In and For the County of Maricopa**

Case Number _____

CV 2015-003285

MAR 06 2015

MICHAEL K. JEANES, CLERK
K. KEE
DEPUTY CLERK

### CIVIL COVER SHEET- NEW FILING ONLY
(Please Type or Print)

Plaintiff's Attorney __Nicholas J. Enoch__

Attorney's Bar Number __016473__

Is Interpreter Needed? [X] Yes  [_] No
If yes, language type: __Spanish__
Attorney/Pro Per Signature _____
To the best of my knowledge, all information is true and correct.

Plaintiff's Name(s): (List all)
__Adam J. Palmer__

__William J. Morrison__

__Sarai Phillips__

Plaintiff's Address:
__Lubin & Enoch, P.C.__

__349 North Fourth Avenue__

__Phoenix, AZ 85003__

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

__Gavin Hays__

__Nancy Hays__

__Springboard, Inc.__

(List additional defendants on page two and/or attach a separate sheet).

EMERGENCY ORDER SOUGHT:    [ ] Temporary Restraining Order    [ ] Provisional Remedy    [ ] OSC
[ ] Election Challenge    [ ] Employer Sanction    [ ] Other _____

[X] RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**).

[ ] RULE 8(i) COMPLEX LITIGATION APPLIES   Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties. (Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

### NATURE OF ACTION
(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
[ ] 101 Non-Death/Personal Injury
[ ] 102 Property Damage
[ ] 103 Wrongful Death
**110 TORT NON-MOTOR VEHICLE:**
[ ] 111 Negligence
[ ] 112 Product Liability – Asbestos
[ ] 112 Product Liability – Tobacco
[ ] 112 Product Liability – Toxic/Other
[ ] 113 Intentional Tort
[ ] 114 Property Damage
[ ] 115 Legal Malpractice
[ ] 115 Malpractice – Other professional
[ ] 117 Premises Liability
[ ] 118 Slander/Libel/Defamation

[ ] 116 Other (Specify) _____
**120 MEDICAL MALPRACTICE:**
[ ] 121 Physician M.D.  [ ] 123 Hospital
[ ] 122 Physician D.O  [ ] 124 Other
**130 CONTRACTS:**
[ ] 131 Account (Open or Stated)
[ ] 132 Promissory Note
[ ] 133 Foreclosure
[ ] 138 Buyer-Plaintiff
[ ] 139 Fraud
[ ] 134 Other Contract (i.e. Breach of Contract)
[ ] 135 Excess Proceeds - Sale
Construction Defects (Residential/Commercial)
   [ ] 136 Six to Nineteen Structures
   [ ] 137 Twenty or More Structures

September 1, 2011

1

**150-199 OTHER CIVIL CASE TYPES:**
- ☐ 156 Eminent Domain/Condemnation
- ☐ 151 Forcible Detainer
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment
- ☐ 158 Quiet Title
- ☐ 160 Forfeiture
- ☐ 175 Election Challenge
- ☐ 179 Employer Sanction Action (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (Not General Stream Adjudication)
- ☐ 187 Real Property
- ☐ Sexually Violent Persons (A.R.S. §36-3704)
  (Except Maricopa County)
- ☐ Minor Abortion (See Juvenile in Maricopa County)
- ☐ Special Action Against Lower Courts
  (See lower court appeal cover sheet in Maricopa)
- ☐ 194 Immigration Enforcement Challenge (§§1-501, 1-502, 11-1051)

**150-199 UNCLASSIFIED CIVIL CASE TYPES:**
- ☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal (All other tax matters must be filed in the AZ Tax Court)

- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute - Other
- ☐ 159 Restoration of Civil Rights (Federal)
- ☐ 159 Clearance of Records (A.R.S. §13-4051)
- ☐ 190 Declaration of Factual Innocence(A.R.S.§12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☐ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain–Light Rail Only
- ☐ 177 Interpleader– Automobile Only
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute - Discrimination
- ☒ 185 Employment Dispute - Other
- ☐ 195(a) Amendment for Marriage License
- ☐ 195(b) Amendment for Birth Certificate
- ☐ 163 Other _____
  (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☐ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☐ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)

_____

_____

Additional Defendant(s)

_____

_____

Name of Person Filing: <u>Nicholas J. Enoch, Esq.</u>
Your Address: <u>349 North Fourth Ave</u>
Your City, State, Zip Code: <u>Phoenix, Arizona 85003</u>
Your Telephone Number: <u>602-234-0008</u>
Attorney Bar Number (if applicable): <u>016473</u>
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

<u>Adam J. Palmer, et al.</u>
**Name of Plaintiff**

Case No.: CV2015-003285

**SUMMONS**

<u>Springboard Inc., et al.</u>
**Name of Defendant**

If you would like legal advice from a lawyer, contact the Lawyer Referral Service at 602-257-4434
or
www.maricopalawyers.org
Sponsored by the Maricopa County Bar Association

---

**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

---

FROM THE STATE OF ARIZONA TO <u>Springboard Inc.</u>
**Name of Defendant**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

COPY

SIGNED AND SEALED this date

MAR 06 2015

MICHAEL K. JEANES, CLERK OF COURT

MICHAEL K. JEANES, CLERK
K. KEE
DEPUTY CLERK

By_____
        **Deputy Clerk**

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

Name of Person Filing: Nicholas J. Enoch, Esq.
Your Address: 349 North Fourth Ave
Your City, State, Zip Code: Phoenix, Arizona 85003
Your Telephone Number: 602-234-0008
Attorney Bar Number (if applicable): 016473
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CV 2015-003285

Adam J. Palmer, et al.                          Case No.:
**Name of Plaintiff**

**SUMMONS**

Springboard Inc., et al.
**Name of Defendant**

> **WARNING: This is an official document from the court that affects your rights. Read this carefully.**
> **If you do not understand it, contact a lawyer for help.**

## FROM THE STATE OF ARIZONA TO Nancy Hays
**Name of Defendant**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

Form #210  LRD 03/23/2004  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five days before your scheduled court date.

SIGNED AND SEALED this date

COPY

MICHAEL K. JEANES, Clerk of Court

By: _____
Deputy Clerk

Name of Person Filing: <u>Nicholas J. Enoch, Esq.</u>
Your Address: <u>349 North Fourth Ave</u>
Your City, State, Zip Code: <u>Phoenix, Arizona 85003</u>
Your Telephone Number: <u>602-234-0008</u>
Attorney Bar Number (if applicable): <u>016473</u>
Representing ☐ Self (Without an Attorney) or ☒ Plaintiff or ☐ Defendant

# SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

<u>Adam J. Palmer, et al.</u>          Case No.: <u>CV 2015-003285</u>
**Name of Plaintiff**

If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at
**SUMMONS** 602-257-4434
<u>Springboard Inc., et al.</u>                        or
**Name of Defendant**                    www.maricopalawyers.org
                                        supported by the
┌─────────────────────────────────────────────────────────────────────────┐
│ **WARNING: This is an official document from the court that affects your rights. Read this carefully.** │
│ **If you do not understand it, contact a lawyer for help.**    Maricopa County Bar Association │
└─────────────────────────────────────────────────────────────────────────┘

## FROM THE STATE OF ARIZONA TO <u>Gavin Hays</u>
                                    **Name of Defendant**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 W. Tierra Buena Lane, Surprise, Arizona 85374. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3.  If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Plaintiff/Attorney listed at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 W. Jackson, Phoenix, Arizona 85003 or at 222 E. Javelina Drive, Mesa, Arizona 85210.

SUM                         Page 1 of 2              Form #210 LRD 03/23/2004 ALL RIGHTS RESERVED
                                                    © Clerk of Superior Court of Arizona in Maricopa County

5.    Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

COPY

**SIGNED AND SEALED this date**

MICHAEL K. JEANES, CLERK OF COURT

MICHAEL K. JEANES, CLERK
K. KEE
DEPUTY CLERK

By_____
      **Deputy Clerk**

Form #210 LRD 03/23/2004 ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona In Maricopa County

LUBIN & ENOCH, P.C.
Nicholas J. Enoch
State Bar No. 016473
Kaitlyn A. Redfield-Ortiz
State Bar No. 030318
Natalie B. Virden
State Bar No. 031609
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
E-mail: nicholas.enoch@azbar.org

Attorneys for Plaintiffs

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Adam J. Palmer, *et al.*, | No. CV2015-003285 |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' JURY DEMAND** |
| Gavin Hays, *et al.*, | |
| Defendants. | (Assigned to the Honorable Arthur T. Anderson) |

Pursuant to Arizona Rule of Civil Procedure 38(b), Plaintiffs Adam J. Palmer, *et al.*, by and through undersigned counsel, hereby request a trial by jury of all issues triable of right by a jury in the above-entitled action.

RESPECTFULLY SUBMITTED this 18th day of March, 2015.

LUBIN & ENOCH, P.C.


/s/ Nicholas J. Enoch
Nicholas J. Enoch, Esq.
Attorney for Plaintiffs

///

///

///

**CERTIFICATE OF SERVICE**

Plaintiffs' Jury Demand filed this 18th day of March, 2015, using the AZTurboCourt eFiling Online System with one (1) copy sent via regular mail this same date to:

Gavin Hays, CEO
Springboard, Inc.
6970 East Chauncey Lane, Ste. 110
Phoenix, Arizona 85054

Gavin Hays, Director
Springboard, Inc.
2525 West Carefree Highway
Building 1, Ste. 106
Phoenix, Arizona 85085

Defendants *pro per*


/s/ Cristina Gallardo-Sanidad

F:\Law Offices\client directory\Palmer, et al\Pleadings\2015-3-18 (6014-001) Plaintiff Jury Demand.wpd